James Newman et al., Plffs. in Err., v. Commonwealth of Pennsylvania.

An offer, by the defense in a criminal case, to exhibit to the jury, by way of cross-examination, a memorandum used by a witness for the prosecu-tion to refresh his recollection as to the names of the defendants was prop-erly rejected, where the commonwealth had not offered the memorandum in evidence.

Under an indictment charging defendants with conspiracy against the employees of certain coal operators, to compel them to quit working by force, threats, and menaces of harm, the exhibition by the counsel for the prosecution, as part of his argument, to the jury of a caricature from "Puck" entitled "Suckers of the Workingmen's Sustenance," under per-

Cited in O'Neil v. Behanna, 182 Pa. 236, 38 L. R. A. 384, 61 Am. St. Rep. 702, 37 Atl. 843.

mission of the court, will not be ground for reversing a judgment of conviction. The use of such matter in argument is within the discretion of the court, unless it appears that thereby serious wrong has been done.

There is no error in affirming the following point of law presented by the commonwealth: "If the jury believe from the evidence in this case that large bodies of men collected in November last about the coal works of J. S. Neel, and other coal operators, named in the indictment, by previous arrangement or concerted action, with the intention of intimidating the miners working, by the presence of great numbers of persons opposed to the course pursued by said working miners, such combination would be unlawful and all persons engaged therein would be guilty of conspiracy, whether actually present at the commission of any act of violence or not."

(Decided November 1, 1886.)

Argued Oct. 19, 1886, before GORDON, TRUNKEY, STERRETT, and GREEN, JJ. October Term, 1886, No. 151, W. D. Error to the Court of Quarter Sessions of Washington County to review a judgment on conviction of defendants of the crime of conspiracy. Affirmed.

The facts are stated by plaintiffs in error as follows:

On the first day of September, 1885, a convention of coal miners was held at Byers' Hall in Monongahela City, Washington county. It was well attended, there being representatives from all the pits on the river. These representatives were delegates duly chosen by the miners at their respective pits. The occasion of the calling of the convention was to consider the proposed reduction in the price of mining coal. After consideration it was deemed wise to meet the proposed reduction with a demand for an increase in the price then paid by their employers, the coal operators. A resolution was unanimously adopted demanding an increase of ½ cent per bushel, and a strike for the purpose of obtaining the advance, inaugurated. A committee was appointed by the convention to conduct the strike and endeavor to get all the miners possible to join them in their demand for higher wages. The means to be used by this committee were of a peaceful and lawful character. The members thereof were to endeavor to persuade and induce other miners to join the strike. But under no circumstances did this convention or the committee it appointed counsel, advise, or countenance the use of force or other unlawful methods to accomplish

the end in view. The strike was conducted quietly, and for a considerable time was devoid of any incident of importance. The committee was quite successful and the majority of the miners along the river joined the strike.

About the 12th or 14th of October, 1885, Robert McClure, a "coal and iron policeman," appointed in accordance with the provisions of the act of April 11, 1866, appeared on the scene in the interest of the coal operators. According to his statement he saw parties from the lower pools in the fourth pool where the trouble finally occurred. But there was no disturbance of any kind, Mr. McClure says, except that in the morning there were parties assembled at the mouths of the various pits, until the 25th and 27th of November. On the 25th and 27th days of November, a steamboat called The Stella came up the river and landed at Lucyville, or Roscoe, near the mines of some of the operators named in the bill of indictment. Quite a number of men were on this boat, and during the time the boat remained at these points there was some violence used and several men were beaten, and some of the unoccupied shanties, belonging to Jordan S. Neel, were stoned and the windows broken in. Informations were made by Robert McClure, a coal and iron policeman, against a large number of persons, the majority of whom were never arrested. Of the persons arrested quite a large number were discharged after a hearing before Justice Dawson, of the borough of California, Washington county, Pennsylvania, and quite a number of the defendants, who were finally tried, waived a hearing and entered into recognizances for their appearance at the February term, 1886, of the court of quarter sessions of Washington county. The informations were not returned to this term, and by agreement the case was continued to the next term of said court. The bill of indictment contained three counts. The first count charges the defendants with a conspiracy against the employees of J. S. Neel, and other coal operators in Washington county, to compel them to quit working for their employers, by force, threats, and menaces of harm, and injure them in that way by depriving them of wages which otherwise they would have been able to earn. The second count charges riot. The third count charges a conspiracy to the wrong and injury of these operators, Neel and others, by compelling their men to quit working, by force, threats, and menaces of harm, and

in that way injuring these operators by depriving them of the services of these men, and so interfering with their business.

The trial in the quarter sessions began in May 19, 1886. On that day a *nol. pros.* was entered, at the instance of the district attorney, as to four of the defendants, namely: Wm. A. Lewis, Noah Wick, Samuel Tomelson, and John Edwards. On May 22, during the progress of the trial, a verdict of not guilty was rendered by the jury, at the instance of the prosecuting officer, as to three of the defendants, namely, John alias Chicken Lee, George Wilson, and Frank Gilmore.

On May 26, a verdict of guilty of conspiracy was rendered by the jury against all the defendants, namely: James Newman, John J. Johnson, John A. Smith, Wm. Walton, Wm. Corwin, Benj. Warren, Lee Dean, Jas. Beatty, Thomas Orkney, Alex. Orkney, David Kelly, Henry Kelly, John Hay, William Craven, Robert Hamilton, John Higgens, Samuel Carney, James Johns, Richard Johns, John Griffen, George Kelly, George Condell, Thomas alias Tush Wilson, and William Carson, and guilty of riot against all these defendants except John J. Johnson and James Newman.

On the trial of the case Thomas Underwood, a witness for the commonwealth, called to testify to the presence of some of the defendants at or near the scene of the trouble on the 25th or 27th of November, 1885, produced, while on the stand, a postal card upon which he had written the names of a number of the defendants. This witness having testified that he wrote the names on this card on the day, and at the time he saw the defendants there, and the card itself showing erasures and alterations, some portions of the writing being fresher than others, the defendants offered to exhibit said card to the jury. The commonwealth objected and the court sustained the objection. First assignment of error.

The court also made an order requiring the defendants who were seated about the court room to occupy certain seats facing the witness stand, and permitted the counsel for the commonwealth to call their names, and required them to stand up one at a time for identification by the witness of the commonwealth. This was excepted to by defendants, and assigned as a reason for a new trial.

Counsel for the private prosecutor addressed the jury for the commonwealth. During the course of his remarks he offered to

exhibit to the jury a copy of "Puck" containing an illustration representing a laborer and family seated about a table, in the center of which was a soup or porridge dish with tubes leading from the bottom thereof to the mouths of certain figures under the table, designated by the artist as "walking delegate," "agitator," etc., etc., and under each figure the name of one of the defendants written by the counsel. Defendants objected and protested, but the court overruled the objection. Fourth assignment of error.

Upon the day the verdict of the jury was rendered a motion for a new trial was made by defendants' counsel and entertained by the court. On June 2, 1886, reasons for a new trial were filed, the motion was argued on June 9, 1886, and on June 15 the motion was overruled and the defendants, except Thomas Wilson, sentenced to pay a fine of $1, the costs of prosecution, and undergo imprisonment in the workhouse at Claremont, in the county of Allegheny, for a period of eight calendar months; and Thomas Wilson, owing to ill health, was sentenced to pay a fine of $1 and undergo imprisonment in the county jail for a period of three calendar months.

On July 2, 1886, the petition of defendants was presented to the Hon. Silas M. Clarke, one of the justices of this court, at his house in Indiana, Pennsylvania, praying for special allowance of a writ of error, which prayer, upon consideration of matters set forth in the petition, was granted, and an order was made enlarging the defendants upon bail, $1,000 being the amount of the recognizance required from each defendant.

The court below, HART, J., charged the jury, *inter alia,* as follows:

"It appears from the evidence that early last fall a general strike among the coal miners was inaugurated along the valley of the Monongahela river, and that a number of miners working for J. S. Neel and other parties named in this indictment, coal operators, whose works are in this county, refused or failed to go out with the other miners upon that strike, and continued to work for their employers. The effect of that refusal was that the strike was a partial failure. Under the circumstances it was determined to make an effort to get these workers to come and join in the strike, and a meeting of miners was held in Monongahela City, and a vigilance committee was appointed to take

measures to bring about the desired result; and meetings, public meetings, were held at California and Coal Centre in November, at which resolutions were adopted favoring peaceful means and measures, and inviting the miners in the lower pools—the first, second, and third pools—to come up into the fourth pool and assist them in inducing these workers to come out and join the strike. Now, gentlemen, it appears further that probably in consequence of these proceedings and these public meetings, and the exertions of the members of the vigilance committee appointed at Monongahela City, towards the last of November a crowd of some hundred, or two hundred, or thereabouts, composed of miners from the lower pools largely, was brought to the fourth pool on the steamboat Stella." Third assignment of error.

The commonwealth presented the following point: "If the jury believe from the evidence in this case that large bodies of men were collected in November last about the coal works of J. S. Neel and other coal operators named in the indictment, by previous arrangement or concerted action, with the intention of intimidating the miners working, by the presence of great numbers of persons opposed to the course pursued by said working miners, such combination would be unlawful, and all persons engaged therein would be guilty of conspiracy, whether actually present at the commission of any act of violence or not."

*Ans.* Affirmed.   Second assignment of error.

*W. J. Brennen, J. L. Judson* and *J. M. Braden,* for plaintiffs in error.—Under the provisions of the act of June 14, 1872,* and the supplemental act of April 20, 1876 (2 Purdon's Digest,

---

*By act of the 14th of June, 1872, it is provided that from and after the passage of this act "it shall be lawful for any laborer or laborers, workingman or workingmen, journeyman or journeymen, acting either as individuals or as the member of any club, society, or association, to refuse to work or labor for any person or persons whenever, in his, her, or their opinion, the wages paid are insufficient, or the treatment of such laborer or laborers, workingman or workingmen, journeyman or journeymen, by his, her, or their employer is brutal or offensive, or the continued labor by such laborer or laborers, workingman or workingmen, journeyman or journeymen, would be contrary to the rules, regulations, and by-laws of any club, society, or organization to which he, she, or they might belong, without subjecting any person or persons, so refusing to work or labor, to prosecution or indictment for conspiracy under the criminal laws of this commonwealth: *Provided,* That this act shall not be held to apply to the member or members of any club, society, or organization, the constitution, by-laws, rules, and regulations of which are not in strict conformity to the Constitution of the state

p. 1172, pl. 2, 3), the defendants had a right to assemble in large or small bodies and persuade others to join their number, and this could not be construed as in any way hindering persons who desired to labor for their employers from so doing, unless there is proof of the use of force, threats, or menaces of harm to persons or property.

The exhibition to the jury of a copy of an illustrated paper called "Puck," containing the cartoon, was prejudicial to the defendants, and its allowance a reversible error. Rush v. Cavenaugh, 2 Pa. St. 187.

Counsel are entitled to employ with the jury only legitimate argument. If counsel undertake what is inadmissible in argument, it is the right of counsel on the other side to object. And whether objection is made or not, the court may stop it. State v. Watson, 63 Me. 128; State v. Williams, 65 N. C. 505; 1 Bishop, Crim. Proc. § 975; Com. v. Byce, 8 Gray, 461.

*J. F. Taylor,* Dist. Atty., with whom were *A. W. & M. C. Acheson* and *W. D. Moore,* for the commonwealth.—Allowing counsel to exhibit the copy of "Puck" was a matter of discretion not reviewable. Ordway v. Haynes, 50 N. H. 159; Legg v. Drake, 1 Ohio St. 286; Rex v. Watson, 2 Starkie, *128; King v. De Berenger, 3 Maule & S. 67; Wharton, Crim. Pr. & Pl. § 779; Gandolfo v. State, 11 Ohio St. 114.

PER CURIAM:

We discover nothing wrong in this case; the instructions of

---

of Pennsylvania and to the Constitution of the United States: *Provided,* That nothing herein contained shall prevent the prosecution and punishment, under existing laws, of any person or persons who shall, in any way, hinder persons who desire to labor for their employers from so doing, or other persons from being employed as laborers."

The act of April 20, 1876, provides as follows: Be it enacted, etc., that "the second proviso in the first section of said act [the foregoing act of 1872], which reads as follows: 'That nothing herein contained shall prevent the prosecution and punishment, under existing laws, of any person or persons who shall in any way hinder persons who desire to labor for their employers, from so doing. or other persons from being employed as laborers,' shall be so construed that the use of lawful or peaceful means, having for their object a lawful purpose, shall not be regarded as 'in any way hindering' persons who desire to labor; and that the use of force, threat, or menace of harm to persons or property shall alone be regarded as in any way hindering persons who desire to labor for their employers from so doing, or other persons from being employed as laborers." And further provides "that all. acts or parts of acts inconsistent herewith be and the same are hereby repealed."

the court to the jury were undoubtedly correct. The offer by the defense to exhibit to the jury, by way of cross examination, the memoranda used by Underwood to refresh his recollection, not offered by the commonwealth, was properly rejected.

So with reference to the exhibition of the picture, exhibited by the counsel for the prosecution as part of his argument to the jury, we cannot say that the court was wrong in permitting it. Things of this kind are very much a matter of discretion, and we are not disposed to review them unless we are satisfied that some serious wrong has been done.

The judgment is affirmed, and it is ordered that the record be remitted to the court below for the purposes of execution.